FILED
SEP 17 2009
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

A09CA 685LY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| I.R.H., A MINOR, BY AND THROUGH HER PARENTS WENDY HUMBLE AND SEAN HUMBLE, AS NEXT FRIENDS OF I.R.H., A MINOR, WENDY HUMBLE, INDIVIDUALLY, AND SEAN HUMBLE, INDIVIDUALLY | § § § § § § § § § § § |
| V. | |
| UNITED STATES OF AMERICA | |

CIVIL ACTION NO._____

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, I.R.H., a Minor, by and through her parents, Wendy Humble and Sean Humble, as Next Friends, Wendy Humble, Individually, and Sean Humble, Individually, and file this Original Complaint against the United States of America and, in support of their causes of action, respectfully show the Court the following:

### I.
### JURISDICTION, PARTIES AND VENUE

1.1     This is a medical malpractice case brought under the Federal Tort Claims Act for severe and permanent injuries arising out of negligent acts or omissions of employees, agents, apparent agents, servants or representatives of the United States while acting within the course and scope of their employment, agency, apparent agency, servitude, or representative capacity, under circumstances where the United States of America, if a private person, would be liable to the Plaintiffs under the laws of the State of Texas where the acts and/or omissions occurred. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §1346 (b).

1.2 At all times relevant to these matters, the employees, agents, apparent agents, servants or representatives of the United States persons were subject to the United States' right to control, including substantial supervision and direction over their day-to-day activities.

1.3 The Plaintiffs, I.R.H., a minor; Wendy Humble; and Sean Humble are individuals residing in Killeen, Bell County, Texas.

1.4 At all times relevant to this Complaint, the Defendant, the United States of America, was the employer of health care providers who administered care and treatment to Wendy Humble while she was in labor with I.R.H. and to I.R.H. at Darnall Army Medical Center.

1.5 The United States of America is a Defendant.

1.6 Defendant United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on John E. Murphy, Acting United States Attorney for the Western District of Texas, 601 N.W. Loop 410, Suite 600, San Antonio, Texas 78216 to the attention of the Civil Process Clerk and by serving a copy of the Summons and Complaint on Attorney General of the United States of America, Eric H. Holder, Jr., by certified mail, return receipt requested, at the Attorney General's Office, 10th and Constitution Avenue, N.W., Washington, D.C. 20530, to the attention of the Civil Process Clerk.

1.7 Venue is proper in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391(a)(1) and (c) as the United States is a Defendant and because all or part of the cause of action accrued in this District and because the Plaintiffs reside in this District.

## II.
## LIABILITY OF THE UNITED STATES OF AMERICA

2.1     This case is commenced and prosecuted against the United States of America pursuant to and in compliance with Title 28 U.S.C. §§2671-2680, commonly referred to as the "Federal Tort Claims Act." Liability of the United States is predicated specifically on Title 28 U.S.C. §§1346(b)(1) and 2674 because the personal injuries and resulting damages of which complaint is made, were proximately caused by the negligence, wrongful acts or omissions of employees of the United States at Darnall Army Medical Center, Fort Hood, Texas, while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable to the Plaintiffs in the same manner and to the same extent as a private individual under the laws of the State of Texas.

2.2     The United States Army is an agency of the United States of America. The United States of America, Defendant, through its agency, the United States Army, at all times material hereto, owned, operated and controlled the health care facility known as Darnall Army Medical Center, and though its agency, the United States Army, staffed the health care facility with agents, servants, and/or employees.

## III.
## JURISDICTIONAL PREREQUISITES

3.1     On December 27, 2006, the Plaintiffs filed their administrative claims based on the facts alleged herein with the appropriate federal agency – The Department of the Army – for damages arising out of the personal injuries sustained by I.R.H., a minor, and Wendy Humble, based on the negligence of the United States' employees, agents, apparent agents, servants or representatives, practicing in the course and scope of their employment at Darnall Army Medical Center in Fort Hood, Texas.

3.2     Greater than six months has passed since the filing of these claims, and the United States Army has failed to resolve these claims. Accordingly, Plaintiffs have complied with all jurisdictional prerequisites and conditions precedent to commencement and prosecution of this litigation.

## IV.
## BACKGROUND FACTS

4.1     This is a case of medical negligence in which a healthy unborn baby suffered severe and permanent brain damage because the medical professionals caring for the baby's mother and the unborn baby ignored signs that the baby was distressed, chose to administer Pitocin when the drug was contraindicated, and failed to effect a timely delivery of the baby before the baby suffered a devastating brain injury.

4.2     In 2005, Wendy Humble sought prenatal care from the Defendant. Wendy was gravida 8, para 4, and had previously delivered four healthy babies. Her estimated date of confinement (due date) was recorded as 23 November 2005.

4.3     Wendy Humble arrived at Darnall Army Medical Center (hereinafter sometimes referred to as Darnall) at approximately 20:20 on December 1, 2005. Upon arrival at Darnall, she was evaluated, was admitted in active labor to the labor and delivery unit at 41 1/7 weeks gestation.

4.4     An external fetal heart monitor was applied. According to the medical records, the fetal heart tracing demonstrated a baseline heart rate in the 120s-130s, positive variability, accelerations, and no decelerations. The fetal heart rate tracing was interpreted as reactive and reassuring. Upon admission to the hospital, the baby was healthy and neurologically intact.

4.5     At 21:20, Wendy's cervix was dilated to 4 cm, was 90% effaced, and the baby was situated at the -2 station (station is the measurement of descent of the baby in the pelvis). At

23:46, Wendy's cervix was dilated to 7 cm, was 100% effaced and the baby was situated at the -2 station. Wendy's membranes were artificially ruptured. There was moderate meconium in the amniotic fluid. An amnioinfusion (manual infusion of fluid into the uterus) was started and an intrauterine pressure catheter and fetal scalp electrode were placed.

4.6 A vaginal exam at 04:30 on December 2, 2005 was unchanged from 23:46. The baby was still situated at the -2 station.

4.7 Between 23:46 and 04:30, the baby's fetal heart rate tracing demonstrated non-reassuring findings including rising baseline heart rate, decreased variability, late decelerations becoming repetitive and stacking of uterine contractions.

4.8 Despite the non-reassuring fetal heart rate and the failure to descend, the nurses and nurse midwife failed to have Wendy examined by a doctor to evaluate I.R.H.'s condition and the progress of labor. Instead, the nurses and nurse midwife administered Pitocin at 05:22. Pitocin was contraindicated as the baseline fetal heart rate was tachycardic, variability was decreased, and there had been and continued to be late decelerations of the heart rate. Intervention to expedite delivery of the baby was necessary but did not occur.

4.9 After Pitocin was started by the nurse midwife, I.R.H.'s heart rate continued to be tachycardic with repetitive late decelerations. Although she was in active labor at admission, neither the nurses nor nurse midwife obtained an evaluation by a doctor to assess the baby's well-being or the progress of labor.

4.10 At 06:40, an obstetrician assessed Wendy and ordered a cesarean section to deliver I.R.H.. I.R.H.'s fetal heart rate became bradycardic. I.R.H. was delivered via cesarean section at approximately 07:05. At delivery it was discovered that Wendy's uterus had ruptured and an abrupted placenta were found. When she was delivered, I.R.H. had no respiratory effort,

had poor tone, and her heart rate was decreased. She was asphyxiated and she had severe metabolic acidosis. She was intubated in the delivery room and transferred to the Neonatal Intensive Care Unit.

4.11   I.R.H. suffered a profound and permanent brain injury caused by lack of oxygen during labor and delivery. I.R.H.'s treating physician at Darnall determined that I.R.H. has been "neurologically devastated."

## V.

## CLAIM FOR NEGLIGENCE OF DEFENDANTS

5.1   The Defendant, the United States of America, by and through its agents, apparent agents, employees, servants, representatives, and contractors, undertook duties to provide proper care to Wendy Humble and her unborn child, I.R.H., with the level of care, skill and treatment that is recognized as acceptable and appropriate by reasonably prudent health care providers.

5.2   Notwithstanding these duties undertaken by the Defendants, the Defendants breached the duties to Wendy Humble and her unborn child, I.R.H., by engaging in at least the following acts or omissions which deviated from and fell below the accepted standards of medical care and treatment:

- Failed to recognize, assess, report, and act upon the arrest of descent;
- Failed to properly monitor, interpret, report, and act upon the fetal heart rate tracing;
- Failed to recognize, assess, report, and/or act upon the rising fetal heart baseline;
- Failed to recognize, assess, report, and/or act upon fetal tachycardia;
- Failed to recognize, assess, report, and act upon decreased variability of the fetal heart rate;

- Failed to recognize, assess, report, and act upon the onset of decelerations and late decelerations of the fetal heart rate;

- Failed to timely report the non-reassuring fetal heart rate patterns to a physician;

- Failed to have Wendy Humble evaluated by a physician to assess I.R.H.'s well-being and the progress of labor;

- Failed to properly prescribe and administer Pitocin;

- Failed to properly and timely care for Wendy Humble and her unborn child, I.R.H.;

- Failed to properly and timely treat Wendy Humble and her unborn child, I.R.H.;

- Failed to properly and timely monitor Wendy Humble and her unborn child, I.R.H.;

- Failed to properly and timely evaluate Wendy Humble and her unborn child, I.R.H.;

- Failed to properly and timely deliver Wendy Humble and her unborn child, I.R.H.;

- Administered Pitocin when Pitocin was contraindicated;

- Failed to act as patient advocate for Wendy Humble and her unborn child, I.R.H., by taking insufficient action to obtain proper and timely physician involvement;

- Failed to initiate the chain of command to obtain proper and timely physician involvement;

- Failed to timely prepare the personnel, facilities, and the patient for a cesarean section; and

- Failed to timely perform a cesarean section to deliver I.R.H..

## VI.
## PLAINTIFF'S DAMAGES

6.1. As a direct and proximate result of the Defendants acts and/or omissions as set forth above, I.R.H. has sustained permanent brain damage with significant physical, mental, emotional, social and economic limitations and effects. These limitations and effects will

continue for the rest of her life. The damages sustained by I.R.H. include, but are not limited to, the following:

- Physical pain and mental anguish sustained in the past and that in reasonable probability will be sustained in the future;

- Disfigurement sustained in the past and that in reasonable probability will be sustained in the future;

- Physical impairment sustained in the past and that in reasonable probability will be sustained in the future;

- Mental impairment sustained in the past and that in reasonable probability will be sustained in the future;

- Loss of earning capacity that in reasonable probability will be sustained in the future after I.R.H. reaches the age of 18 years;

- Medical, nursing, therapy, attendant care, and rehabilitation expenses that in reasonable probability will be sustained in the future after I.R.H. reaches the age of 18 years;

- Special educational expenses that in reasonable probability will be sustained in the future after I.R.H. reaches the age of 18 years;

- Special adaptive living expenses that in reasonable probability will be sustained in the future after I.R.H. reaches the age of 18 years; and

- Loss of consortium with her parents, Wendy and Sean Humble.

6.2 As a direct and proximate result of the Defendants acts and/or omissions as set forth above, Wendy Humble and Sean Humble seek recover for the economic damages incurred and to be incurred on I.R.H.'s behalf until I.R.H. reaches majority. Those damages, include, but are not limited to, damages, as follows:

- Medical, nursing, therapy, attendant care, and rehabilitation expenses for I.R.H. sustained in the past and that in reasonable probability will be sustained in the future until I.R.H. reaches the age of 18 years;

- Special educational expenses for I.R.H. sustained in the past and that in reasonable probability will be sustained in the future until I.R.H. reaches the age of 18 years;

- Special adaptive living expenses for I.R.H. sustained in the past and that in reasonable probability will be sustained in the future until I.R.H. reaches the age of 18 years;

- The reasonable value of attendant care provided by Wendy Humble to I.R.H. to the date of trial;

- The reasonable value of attendant care provided by Sean Humble to I.R.H. to the date of trial;

- Loss of household services of I.R.H.; and

- Out of pocket expenses.

## VII.
## PRAYER FOR RELIEF

7.1   WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that this case proceed to trial, and that Plaintiffs recover a judgment of and from Defendant for actual damages in the amount of such an amount as the evidence may show and the trier of fact may determine to be proper, post-judgment interest, costs, and all other and further relief to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

_____
MICHAEL ARCHULETA
Texas State Bar Number: 00783555
**JAMAL K. ALSAFFAR**
Texas State Bar Number: 24027193
**LAURIE HIGGINBOTHAM**
Texas State Bar Number:50511759
**ARCHULETA, ALSAFFAR & HIGGINBOTHAM**
P.O. Box 340639
Austin, Texas 78734
Telephone: (512) 266-7676
Telefax: (512) 266-4646

*By Permission for Dale D. Williams*

**Dale D. Williams**
State Bar No. 21523000
**Laura Brown**
State Bar No. 19238020
**WILLIAMS & BROWN, L.L.P.**
Bridgeview Center, 2nd Floor
7901 Fish Pond Road
Waco, Texas 76710
(254) 741-6200
(254) 741-6300 (FAX)

**Attorneys for Plaintiffs**